UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>V. )<br>)   CRIMINAL NO. 08-10336-NG<br>DONG VAN NGUYEN, )<br>        Defendant )<br>)<br>) | |

**Defendant's Sentencing Memorandum**

Now comes the Defendant, Dong Van Nguyen, by and through undersigned counsel, pursuant to 18 U.S.C. §3553(a), and the U.S. Sentencing Guidelines, and hereby moves the Court to depart and/or deviate from the applicable guideline range, as calculated by the Court, and impose a sentence of time served in this matter, which will amount to a sentence of approximately 28 months by the date of the scheduled sentencing hearing.[1]  While a sentence of time served is substantially below the advisory guideline range as contemplated by the plea agreement executed by the parties (in which the government agrees to ask for no more than 70 months imprisonment), extraordinary grounds exist in this case that warrant such a departure and/or deviation.

Indeed, this case is quite tragic.  Mr. Nguyen's life has been a constant struggle since the days of his childhood in Vietnam, first when his parents separated due to his father's infidelity, which led to serious financial problems, and later when the communists invaded South Vietnam. *See* Report of Dr. Marilyn Price, M.D., Law & Psychiatry Service, Massachusetts General Hospital ("Dr. Price Report" herein), attached hereto as Exhibit 1, at 2.  Mr. Nguyen ultimately persevered, however, and began to live the paradigmatic American dream after escaping

---

[1] The defendant has been in custody since the date of his arrest, November 13, 2008.

1

Vietnam in 1980 in a small vessel with limited food supplies.[2]  Dr. Price Report at 3.  After arriving in Boston, Mr. Nguyen worked long hours and managed to save enough money to purchase a lobster boat in or about 1987 (with a little help from his wife's relative), as many Vietnamese immigrants became involved in the lobster market.  Dr. Price Report at 3.  During those seven years (1980 to 1987), Mr. Nguyen was nothing but a model citizen, he had none of the arrests or convictions detailed in his Presentence Report (save a motor vehicle insurance violation), and his only intent was building a life in America for his young family.  It all came unraveled, tragically, in 1998, when Mr. Nguyen was charged with possession of and/or selling short lobsters.  He was forced to sell his lobster boat at great loss, and was unable to repay his wife's relative.  Mr. Nguyen "became anxious and depressed after losing his boat," he "had difficult sleeping and he felt helpless," and, at that time, he "first began abusing heroin and cocaine," and "quickly advanced to daily use."  Dr. Price Report at 3.  Since that time, his life has spiraled out of control—or, more precisely, spiraled out of his control and into the control of the drugs he was abusing.  Predictably, a string of arrests, failed familial relationships, attempts to sell drugs to finance his addictions, and imprisonment ensued.[3]  *See generally* Dr. Price Report at 3-5.

Ironically, Mr. Nguyen's arrest in this case probably saved his life, a fact that has not been lost on the defendant.  Since his arrest, Mr. Nguyen has undergone an incredible transformation, physically and psychologically.  Physically, the change almost defies adequate description.  Freed from the destructive forces of drugs, Mr. Nguyen has physically thrived,

---

[2] As detailed *infra*, Mr. Nguyen was rescued by an American ship after three days in the open ocean, and he was ultimately transported to Boston, Massachusetts in November 1980 (after 3 months in a refugee camp sponsored by the U.N. International Rescue Committee).

[3] For what it is worth, Mr. Nguyen advises that he had no intent to possess or sell short lobsters, but had to quickly take in his fishing gear due to a gathering storm regardless of their contents, and the Coast Guard ended up charging him with possession of and/or selling short lobsters.

2

exercising for hours every day, and has gained approximately 30 to 35 healthy pounds since being arrested.[4]  *See* PSR at Paragraphs 88, 91.  Psychologically, Mr. Nguyen has made great strides as well, though he fully understands his transformation from addict to productive member of society will be a perpetual struggle.  Indeed, Mr. Nguyen is thankful for his arrest, and has told Probation he is "happy that he got his life back by being in prison," and actually "feels fortunate that his arrest . . . and detention forced him to become sober."  PSR at ¶¶94, 101.  He has used that time "reflecting on his past drug use and how it impacted his life."  PSR at ¶94.  Understanding his recovery will be a daily struggle, Mr. Nguyen has requested release to some type of halfway house or another structured environment wherein he can continue his treatment, within that structured environment, while slowly integrating himself back into society.  *See* PSR at ¶85 ("The defendant further indicated that he hopes for a structured release plan which includes serving a period of time in a halfway house to assist with his transition to the community").  His greatest fear is simply being released without restrictions or structure; instead, he craves a facility that will permit him to continue his recovery, obtain employment and slowly work his way back into society.

   Mr. Nguyen fully accepts responsibility for his own decisions.  Like many Vietnamese men, he is an extremely proud man who feels incredible remorse and shame for the path his life has taken.  The issue presented here—as in all sentencing proceedings—is "what" punishment is fair and necessary, given all of the relevant facts and circumstances.  For all of the reasons articulated herein (as well as those to be presented on or before the date of sentencing), including Mr. Nguyen's drug dependence and depressive disorder, his medical needs, and the fact that

---

[4] Indeed, the physical change in appearance has been so dramatic that counsel contemplated filing an affidavit in connection with the sentencing proceeding to attest to the changes.  When counsel advised government counsel he planned, for the first time ever, to file an affidavit with the Court in support of a client at sentencing, the government advised it would not be necessary, and the government would confirm the transformation.

3

prison will not afford him the further treatment and environment he needs to continue his successful transformation, the defense respectfully requests a sentence of time served in this matter, and a term of supervised release of whatever length and with whatever conditions the Court deems appropriate and necessary.

I.     **Relevant background and circumstances**.[5]

Dong Van Nguyen was born in Vung Tau, South Vietnam, and initially enjoyed a "relatively happy early childhood," being raised by his father (who worked as a fireman) and his mother (a restaurant owner) in a home purchased by his parents, with his six siblings. Dr. Price Report at 2; PSR at ¶¶64, 69-74. After his father abandoned Mr. Nguyen, his siblings and his mother, "there were serious financial problems," and it became difficult to even feed the whole family. Dr. Price Report at 2-3. Mr. Nguyen was eventually sent to a government-run military boarding school/orphanage, the conditions of which deteriorated after the communists invaded South Vietnam. Dr. Price Report at 3; PSR at ¶64, 66 (noting that "[t]he Communist invasion of South Vietnam further impacted the lifestyles of most South Vietnamese" and Mr. Nguyen reported that "his educational opportunities and freedoms were limited, and the economy suffered"). Mr. Nguyen was returned to his family when he was 14 years old, but he eventually left "to live with people who would provide just food and shelter in exchange for working." Dr. Price Report at 3. Mr. Nguyen was physically abused by these people, but he willingly suffered the abuse "because there were no other options." Dr. Price Report at 3. Eventually, Mr. Nguyen managed to flee South Vietnam, an experience described by Dr. Price in her report:

---

[5] Much of Mr. Nguyen's personal history and the case history are set forth in detail in Dr. Price's report, as well as the presentence report. As such, Mr. Nguyen will seek to avoid unnecessary repetition herein. Of course, the Court is no longer straight-jacketed regarding the types of information it should consider in imposing a reasonable sentence. 18 U.S.C. §3661 clearly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statute, like the parsimony principle contained in 18 U.S.C. §3553(a), now assumes greater significance in the post-*Booker* sentencing regime.

4

> Mr. Nguyen was married in 1980 and he and his wife, Hang, were determined to escape from Vietnam. Mr. Nguyen had worked as a fisherman and as a result he had contacts who could help him purchase diesel fuel. He was offered 2 places on a boat if he could secure the diesel fuel needed for the voyage. They left Vietnam in a small vessel with limited food supplies. Mr. Nguyen explained that many of these boats never made it back to land. After 3 days in the ocean, the refugees were fortunate to be rescued by an American ship and taken to Singapore. They were placed for 3 months in a refugee camp, which was sponsored by the United Nations International Rescue Committee. They travelled to San Francisco first but remained there for only a day or 2 before being transported to Boston in November 1980.

Dr. Price Report at 3[6]; *see* PSR at ¶76.

Mr. Nguyen brought his tremendous work ethic with him from Vietnam, attending school for six months in an attempt to learn English while working as a dishwasher at a local hotel. Dr. Price Report at 3. He began working his way up the ladder at local hotels, eventually working as a waiter for banquets, living in Boston with his wife and newborn son, and saving enough money to purchase a lobster boat in approximately 1987. As noted *supra*, in or about 1988, Mr. Nguyen was arrested and charged with possessing and/or selling short lobsters, a seemingly innocuous event that ultimately triggered a destructive cycle of tragedy. Mr. Nguyen was forced to sell his boat at a financial loss, which triggered severe anxiety and depression, in part because $5000 of the boat's purchase price ($20,000 to $25,000) had been borrowed by Mr. Nguyen from his wife's relative.[7] Mr. Nguyen began to self-medicate with heroin and cocaine. Dr. Price Report at 3, 6. The depression and anxiety worsened with the impending birth of a second child, and Mr. Nguyen feared he would be unable to provide a secure future for his children. Dr. Price Report at 4. Not surprisingly, a string of failed relationships and business endeavors followed in the wake of his drug abuse. *See generally* Dr. Price Report at 4.

---

[6] Dr. Price inadvertently misspelled Mr. Nguyen's wife's name—it is "Hang," rather than "Hung."
[7] Mr. Nguyen informed counsel regarding the purchase price of the lobster boat and the details of the loan while preparing his sentencing memorandum for submission to the Court. These details are not found within Dr. Price's report or the PSR. To the extent the government contests or questions these facts, the defendant will submit an affidavit for the Court's consideration.

5

Indeed, Mr. Nguyen's life has been marked by relationships destroyed by his drug abuse. His marriage "deteriorated because he began using drugs," resulting in a separation in 1987 and a divorce in 1997.  Dr. Price Report at 7; PSR at ¶78 (noting Mr. Nguyen reported "a good relationship with Hang Nguyen" but "their relationship deteriorated in 1988 when the defendant began abusing drugs," which resulted in a "personality change[]" and a separation "due to his drug use").  As noted, there were two sons born to that marriage, but Mr. Nguyen has not had any contact with either of his sons since approximately 2001.  Dr. Price Report at 3-4, 7.  Mr. Nguyen later became serious with Lan Le, whom he planned to marry and with whom he has a daughter, Diana, but that relationship too was destroyed by his drug abuse, which led to a federal prosecution in 1993 and imprisonment thereafter.  Dr. Price Report at 4.  Ms. Le eventually married someone else, *see* Dr. Price Report at 4, but Mr. Nguyen has managed to maintain some relationship with his daughter, who is now 17 years old, *see* Dr. Price Report at 7; PSR at ¶83.

By 2005, the time of the instant offense, Mr. Nguyen was "abusing large quantities of heroin and cocaine," and would "drink to pass out about once or twice a week."  Dr. Price Report at 4.  At the time of his arrest, "Mr. Nguyen was injecting 1 to 2 [grams] of heroin daily and injecting or snorting a few grams of cocaine daily."  Dr. Price Report at 4-5.[8]  Frankly, as Mr. Nguyen himself concedes, his arrest in this matter in all likelihood saved his life.  Dr. Price Report at 5; PSR at ¶86 (Ms. Tran, Mr. Nguyen's codefendant and girlfriend at the time of his arrest, describing him as "good man who had a terrible addiction").  He has long suffered from depression, questioning why his life became what it did, *see* Dr. Price Report at 5 ("he keeps thinking, 'Why is my life like this?'"), and medical records indicate an attempt to cut his wrists in June 1989.  Dr. Price Report at 5.  The defendant reports that he also would cut himself in

---

[8] Internal medical records from Plymouth County House of Correction indicate that Mr. Nguyen reported at his intake using 2-3 grams of heroin on the date of his arrest.  Record attached hereto as Exhibit 2.

6

various parts of his body, a form of self-mutilation undoubtedly fueled by his disgust for himself and his actions. His drug abuse "was so out of control that it was affecting both his mental and his physical health," and he had "lost considerable weight because he was preoccupied with using drugs and he was not eating properly." Dr. Price Report at 5; *see generally* PSR at ¶¶96-101 (detailing substance abuse history, including abuse of heroin, powder cocaine and crack cocaine). Since being incarcerated, Mr. Nguyen has gained approximately 35 pounds, going from approximately 130 pounds upon his arrest to approximately 165 pounds at this point, the result of a serious dedication to exercise and a renewed ability to focus on nutrition (rather than drugs). He does, however, suffer from some serious health problems, including Hepatitis C. *See* PSR at ¶90 (noting the defendant's diagnosis of Hepatitis C during his detention in 2008). The defendant reports that a specialist within the Plymouth County Correctional Facility told him in 2009 that he had only 10 years to live given the gravity of his Hepatitis C condition. Disturbingly, Mr. Nguyen has received no treatment for this condition while being incarcerated during the pendency of this matter. PSR at ¶90.

**II.     Argument**.

     A.     *General Sentencing Principles*.

The controlling legal standards are by now well-rehearsed. With the Supreme Court decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Gall v. United States*, 128 S.Ct. 586 (2007), and *Kimbrough v. United States*, 128 S.Ct. 558 (2007), federal sentencing has undergone dramatic changes, and the sentencing options available to district courts have significantly broadened in the wake of *Booker* and its progeny. *See, e.g., United States v. Taylor*, 532 F.3d 68, 69 (1st Cir. 2008)("The Court's decision in *Gall*, combined with its decisions in *Kimbrough* . . . and *Rita v. United States*, 127 S.Ct. 2456, . . . (2007), makes clear that in the post-*Booker*

7

world, district judges are empowered with considerable discretion in sentencing . . . ."); *United States v. Boardman*, 528 F.3d 86, 87 (1st Cir. 2008)(district court has "broader freedom than it did before *Kimbrough*"); *United States v. Rodriguez*, 527 F.3d 221, 225 (1st Cir. 2008)("In *Gall*, . . . the Justices expounded further on a district court's authority to vary from the guidelines, emphasizing that district courts have wide latitude in making individualized sentencing determinations"); *United States v. Politano*, 522 F.3d 69, 73 (1st Cir. 2008)("In view of the Supreme Court's recent decision in *Gall*, we emphasize that the broad discretion afforded to the district court is paramount"); *United States v. Martin*, 520 F.3d 87, 90 (1st Cir. 2008)("*Gall* makes clear that courts of appeals must grant district courts wide latitude in making individualized sentencing determinations"); *see also United States v. Thurston*, 544 F.3d 22, 26 (1st Cir. 2008)(affirming sentence which court had twice previously vacated in light of *Gall*'s broader definition of the deference given to district judges' sentencing decisions).  No longer are district courts bound by the strictures of the guidelines or even permitted to presume that the guidelines provide the appropriate sentence in a given case.

   Of course, the guidelines do remain the starting point and the initial benchmark.  Post-*Gall*, however, "the district court's discretion in determining a defendant's sentence is very broad; once the guidelines sentencing range is properly calculated, 'sentencing becomes a judgment call' for the court, and the court may construct a sentence varying from the guidelines sentencing range 'based on a complex of factors whose interplay and precise weight cannot even be precisely described.'" *United States v. Innarelli*, 524 F.3d 286, 291 (1st Cir. 2008), *quoting Martin*, 520 F.3d at 92. To the extent there exist "sound, case-specific reasons" to do so, a sentencing court is authorized to deviate from the guidelines.  *Martin*, 520 F.3d at 91. The post-*Gall* sentencing inquiry, after the court has calculated the GSR, is "broad, open-ended, and

8

significantly discretionary." *Id.* at 92.  Moreover, post-*Kimbrough*, sentencing courts may "deviate from the guidelines in an individual case even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing Commission.'" *Politano*, 522 F.3d at 74, *quoting Martin*, 520 F.3d at 96. *See, e.g., Vanvliet*, 542 F.3d at 271.

> B. *A sentence of time-served is warranted given the facts and circumstances of Mr. Nguyen's life and those underlying the charged conduct in this case, including but not limited to Mr. Nguyen's depression disorder and drug dependency.*

Mr. Nguyen ultimately bears responsibility for his criminal conduct, and he has fully accepted and continues to fully accept responsibility for that conduct.  His acceptance of responsibility for that conduct does not, however, explain the social and psychological underpinnings to his decision-making over the relevant time period.  Some human beings deserve punishment for their conduct, others deserve leniency, and the difference between the two sometimes lies in the root causes of their criminal conduct, whether they are likely to engage in recidivist behavior, whether they have been rehabilitated or are particularly receptive to rehabilitation, and whether incarceration will significantly further the goals of sentencing.  It is a complex matrix of factors, ultimately dependent upon the individual human being at issue, which is precisely why our criminal justice system has vested this Court with discretion to differentiate and individualize sentencing.

Here, it is undisputed that, at the time of his arrest and while engaged in the conduct charged in this case, Mr. Nguyen was in the throws of a terrible drug addiction. *See generally* Dr. Price Report.  While it does not excuse his criminal conduct, Mr. Nguyen's extraordinary drug abuse provides a compelling and irrefutable explanation for that conduct.  Scholarly literature explaining the causal connection between drug abuse and criminal behavior is robust and persuasive.  The tragedy of this case resides in the fact that Mr. Nguyen, prior to losing his

9

lobster boat, embodied the American dream, having landed on the shores of this country with nothing but a strong work ethic, a stronger desire to succeed and provide for his family, and a reservoir of pride—all of which was lost because of a fishing violation. It was only after his arrest for selling short lobsters—and his subsequent loss of all that he had worked for after arriving in America—that his self-destructive abuse of drugs began. *See* PSR at Part B ("The Defendant's Criminal Conduct"), at ¶¶39-49 (confirming no arrests or criminal conduct—save a motor vehicle insurance violation—predate Mr. Nguyen's 1988 charge of possessing and selling short lobsters).

The issue becomes what is the most appropriate sentence in this case, given Mr. Nguyen's conduct and the facts and circumstances of his life. In terms of punishment, Mr. Nguyen has inflicted enough self-punishment for a lifetime. He has destroyed every meaningful relationship in his life, has lost contact with his two sons and his brother, and has simply wasted the past twenty-plus years of his life, all of which has resulted in suicidal thoughts and at least one suicide attempt. His extreme anguish and shame over the course of his life has manifested itself in his self-mutilation conduct. It is perhaps not surprising, then, that Dr. Price has diagnosed Mr. Nguyen as suffering not only from drug dependency, but a "primary depressive disorder" as well, or a depression resulting from the effects of his drug abuse, or a combination of both. Dr. Price Report at 10-11.

Further incarceration will not specifically deter Mr. Nguyen, as strives to have a productive life and he, more than anyone, seeks to avoid the failures of his past relapses. Likewise, any additional jail time will not meaningfully provide any general deterrent value. Mr. Nguyen's criminal case is one of thousands of drug cases winding its way through the judicial system, and there has been no publicity or social awareness attached to his case. Of course,

further incarceration will incapacitate Mr. Nguyen, but incapacitation will not resolve the psychological issues that underlie his drug abuse nor assist Mr. Nguyen with a gradual integration into society, and it therefore should not be the prime or motivating focus of sentencing in this case.  Instead, the defense respectfully submits that any consideration of incapacitation is outweighed by the other goals of sentencing, which militate in favor of a sentence of time served with conditions of release that provide Mr. Nguyen with the best opportunity to overcome his drug dependence and achieve a productive life.

Indeed, Dr. Price's compelling case history and diagnoses provides the Court with a principled and sound basis to depart and/or deviate from the applicable advisory guideline range, and impose a sentence of time-served, which fully serves the traditional goals of sentencing, as set forth in 18 U.S.C. §3553(a).  As Dr. Price notes in her conclusion regarding Mr. Nguyen's need for treatment:

> Mr. Nguyen has been reluctant to seek treatment for his depression.  He had a very difficult childhood.  He was abandoned by his father.  His mother placed him in a military school/orphanage because of financial problems.  When he returned home he was unable to complete his education and worked for individuals who were physically abusive just for food and shelter.  He and his wife got on a small boat in an attempt to escape Vietnam.  Many of the people who left Vietnam by boat never made it back to land.  He had to leave his family behind.  Despite these early challenges, Mr. Nguyen did very well for many years in Boston . . . Once he had achieved some success, he lost all of his savings when he purchased the boat and at that time became depressed.  Mr. Nguyen needs treatment for the depression.  **It was only after this major setback that Mr. Nguyen began using drugs and alcohol to deal with his depression**.  Therefore, I would recommend that he receive treatment for depression as well as for substance abuse.

Dr. Price Report at 11 (emphasis added).  To date, Mr. Nguyen has undergone tremendous rehabilitative efforts.  His physical appearance has undergone demonstrable changes.  He has begun to engage in the psychological self-examination required to overcome such a deep drug addiction.  Frankly, there are no promises he will succeed in his pursuit, but further incarceration is not the most effective means to facilitate his recovery.

11

In addition to all of the foregoing, Mr. Nguyen suffers from a serious case of Hepatitis C that has gone untreated during his pretrial incarceration. While the Bureau of Prisons routinely provides lip-service to the notion that it can provide adequate medical treatment for inmates with medical conditions, anecdotal reports "from the trenches" of the criminal justice system demonstrate otherwise. Client after client complains about the medical treatment within the Bureau of Prisons, and no client (or client family member) has ever lauded or complimented the Bureau of Prisons in this regard. While concerns for punishment, deterrence or other sentencing considerations would often outweigh concerns for medical treatment, that is not the case here.

Given all of the foregoing, the defense respectfully submits that a sentence of time-served, with appropriate conditions of supervised release, is a fair and just sentence, and certainly "sufficient but not more than necessary" to meet the goals of §3553(a). Dr. Price opines that Mr. Nguyen "requires treatment for both the Depressive Disorder and his substance abuse/dependence because there is a relationship between his losses, his mood and his substance abuse." Dr. Price Report at 11. As Mr. Nguyen has requested, and Dr. Price confirms, release to some residential treatment facility "to promote a stable living environment" should be included as a condition of his release. Dr. Price Report at 12. Finally, the defense respectfully submits that the Bureau of Prisons will not, in practice, provide Mr. Nguyen with the individual psychotherapy treatment he needs to continue his development, or the proper treatment for his serious Hepatitis C condition.

    C.    *The Court should not sentence Mr. Nguyen as a career offender, nor should it sentence Mr. Nguyen based upon facts not admitted or proved.*

First, Probation has calculated Mr. Nguyen's advisory guideline range based on a volume of facts submitted by the government to Probation that have **not** been admitted by Mr. Nguyen, which did **not** constitute the factual basis for Mr. Nguyen's change of plea, and which are **not**

12

contemplated by the plea agreement executed by the parties.  As the Court may recall, at the Rule 11 hearing, the government proceeded to detail a similar factual history, advising the Court it was prepared to prove such facts if this case had gone to trial, but at that time the defendant noted that Mr. Nguyen only admitted to the facts of the transaction identified in his plea agreement, and the government confirmed during the Rule 11 hearing those were the only facts to which the defendant was required to accept for the purposes of his plea.  The fact of the matter is this case did not proceed to trial and the government entered a plea agreement that holds Mr. Nguyen responsible only for the single transaction identified in the agreement.  For these reasons, the Court should calculate Mr. Nguyen's guideline range based only upon the conduct he admitted during the Rule 11 hearing—*i.e.*, the conduct that is the subject matter of the plea agreement in this case.

Second, Probation has determined that Mr. Nguyen is a career offender, based in part upon a June 1989 arrest for possession of a Class A substance with intent to distribute.  *See* PSR at ¶¶54 (identifying offenses in paragraphs 41 and 48 as the predicate offenses); 41 (detailing a state charge of possession of Class A with intent to distribute, a violation of probation, and a sentence of 18 months to the Bridgewater Substance Abuse Center).  Before the defendant pleaded guilty, the government advised the defendant that it did not believe Mr. Nguyen qualified as a career offender, and further advised that it had vetted the issue with Probation, which concurred in the government's assessment.  Likewise, based upon a review of the criminal record provided by the government in this case, counsel did not believe that Mr. Nguyen qualified as a career offender.  The parties' potential error in this regard stems from the defendant's official BOP criminal record, which, with respect to the offense listed in Paragraph 41, provides that a sentence of only 12 months was imposed upon the probation violation (rather

than 18 months), which would render that conviction non-scorable for career offender purposes, because a ten year time period would be applicable for a sentence of 12 months. *See* U.S.S.G. Section 4B1.2 , Application Note 3 (instructing that provisions of Section 4A1.2 are applicable to the counting of convictions under Section 4B1.1); Section 4A1.2 (e) (noting that a prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant case is counted, but any other prior sentence should be counted only if imposed within ten years of the defendant's commencement of the instant offense); Exhibit 3 (relevant criminal record). If the defendant was sentenced to only one year with regard to the crime charged in Paragraph 41, as his criminal record indicates, Probation and the government agree that Mr. Nguyen would not qualify as a career offender. *See* PSR at Paragraph 54 (identifying Paragraph 41 as one of only two predicate career offender provisions).

Given the foregoing, the defendant makes the following arguments:

1. The Court should depart from any career offender designation because it overstates the seriousness of the defendant's record, *see United States v. Person*, 377 U.S. 308, 310 (D.Mass.2005) (Ponsor, J.) (the "court nevertheless made the determination that, even under a mandatory Sentencing Guidelines regime, it would depart downward to a sentence of 84 months, based upon the conclusion that the career offender status would grossly overstate the seriousness of the defendant's criminal history"), and makes "no sense" given the facts and circumstances of Mr. Nguyen's life, *see United States v. Ennis*, 468 F.Supp.2d 228, 236 (D.Mass.2006) (Gertner, J.) ("There are times when every judge tallies up the Guideline numbers, arrives at a range, and concludes that the result makes absolutely no sense. That is the case here. The Guideline results-driven by the career offender guidelines and the quantities-make

14

no sense in terms of the purposes of punishment, especially, specific deterrence, incapacitation, and just punishment"). Indeed, given the age of the predicate conviction, it barely counts as within the 15 year time period, assuming *arguendo* Mr. Nguyen received a sentence of 18 months, rather than 12 months. *See also* Defendant's Objections to PSR.

        2.       If the Court is inclined to sentence Mr. Nguyen as a career offender, or to calculate his guidelines based upon a career offender designation, or to calculate his guidelines based upon conduct or facts that have not been admitted by the defendant, the defendant would request a suspension of the sentencing hearing so the defendant can consider whether he should seek to withdraw his guilty plea in this matter.

        D.    *The MDMA Guideline lacks an empirical basis and the Court should therefore depart and/or deviate from the advisory guideline range.*

The Court should depart and/or deviate from the empirically-flawed U.S. Sentencing Guideline for MDMA (hereinafter "MDMA Guideline"). The rationale underlying consideration of the GSR established by the guidelines in weighing the §3553(a) factors rests upon the assumption that the Sentencing Commission has "base[d] its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough*, 128 S.Ct. at 574. Where the Commission has carried out this function, the resulting guidelines ranges are worthy of consideration by sentencing courts because, at least in theory, they may "reflect a rough approximation of sentences that might achieve §3553(a)'s objectives." *Id., quoting Rita*, 127 S.Ct. at 2465. As the Supreme Court has noted, however, in developing guidelines sentences for drug offenses, the Commission departed from the empirical analysis which underlies most of the offense guidelines in favor of keying offense levels to the mandatory minimum sentences prescribed by Congress. Thus, those guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." *Kimbrough*, 128 S.Ct. at 570, 574-

75; *see Gall*, 128 S.Ct. at 594 n.2. Section 2D1.1 effectively substitutes the quantity of drugs involved for the individualized consideration demanded by §3553(a) and recent Supreme Court precedent. There is, therefore, less reason to believe that, as a general matter, the §2D1.1 GSR strikes the appropriate §3553(a) balance. After *Kimbrough*, it would <u>not</u> be an abuse of the Court's discretion to take into consideration its policy disagreement with the §2D1.1 GSR when determining the sentence to be imposed.

The MDMA Guideline was established nearly ten years ago in response to public panic and is based on faulty science that has since been repudiated. When the Sentencing Commission created the MDMA Guideline in 2001, it crafted a penalty structure based on the conclusion that MDMA was more harmful than cocaine and in light of what the Commission viewed as the pharmacological and physiological harms of the drug. Subsequent studies have substantially undercut scientific support for the Commission's conclusion that MDMA is more harmful than cocaine, as well as the Commission's assessment of the harms of MDMA. Cocaine use is not only much more prevalent in the United States population, but according to recent government data, it is thirteen times more likely to cause a user to visit an emergency room. As for the harms of MDMA itself, recent research reveals that the harms are relatively mild and reversible rather than severe and long-lasting. Scientists have discovered that most of the research from ten years ago was flawed. For example, animal studies overestimated the harms of MDMA to humans because they gave animals doses several times higher than the average human dose. Human studies failed to control for important variables such as the use of other drugs and propensity toward mental illness.

Under *Kimbrough v. United States*, 552 U.S. 85 (2007), this Court has discretion to vary from Guidelines that lack an empirical basis. Because the MDMA Guidelines are seriously

flawed, this Court should exercise that discretion here.  Like the crack cocaine Guideline at issue in *Kimbrough*, the MDMA Guideline is scientifically unsupportable and, as a result, prescribes sentencing ranges that are unfairly severe.  Prior to the 2001 MDMA amendment, one gram of MDMA was treated as equivalent to 35 grams of marijuana; the 2001 amendment set one gram of MDMA equal to 500 grams of marijuana, resulting in the length of the average MDMA sentence more than doubling.  This Court should exercise its sound discretion under *Kimbrough* to avoid blindly following a Guideline that offers no legitimate guidance.  Instead, it should look beyond the faulty data that the Commission relied on in 2001, and ultimately depart and/or deviate from the advisory guideline range for Mr. Nguyen to account for the empirically-flawed MDMA guideline.  For a comprehensive analysis of this issue, and in support of this argument, the defendant directs the Court to the matter styled *United States v. Phan*, pending in the Western District of Washington (Case No. 10-Cr-00027-RSM), including but not limited to the defendant's supplemental sentencing memorandum in that matter (Dkt. Entry 119), attached hereto as Exhibit 4 (without the voluminous exhibits attached to said pleading by the defendant in that matter).

**III.**     *Conclusion*.

For all of the foregoing reasons, as well as additional grounds and reasons to be submitted to the Court on or before the date of sentencing, the defendant respectfully requests a sentence of time served, for whatever period of time the Court believes warranted, and with whatever conditions the Court believes necessary.

                                          Respectfully submitted,
                                          DONG VAN NGUYEN,
                                          By His Attorney,

                                          **/s/ Robert M. Goldstein**
                                          Robert M. Goldstein, Esq.
                                          Mass. Bar No. 630584
                                          20 Park Plaza, Suite 1000
                                          Boston, MA 02116
                                          (617) 742-9015
                                          rmg@goldstein-lawfirm.com

Dated: March 10, 2011

**Certificate of Service**

     I, Robert M. Goldstein, hereby certify that on this date, March 10, 2011 a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including Assistant U.S. Attorneys Timothy Moran and Richard Hoffman.


                                          **/s/ Robert M. Goldstein**
                                          Robert M. Goldstein